which is United States against Orozco-Sanchez. Mr. Hillis. May it please the court. Counsel. My name is Daniel Hillis. I represent Mr. Orozco-Sanchez with the Federal Public Defender's Office and I'll be arguing three issues on appeal. First, is the district court erred by failing to consider all of the 3553A factors when deciding whether to impose the fully consecutive 75-month sentence that it ran in addition. Hadn't it just talked about those factors in general when it then turned to the question of consecutive versus concurrent? The district court discussed one factor when making the specific determination it was required under 3584B and that was respect for the law. 3553A has several more factors than that and they were nowhere discussed and I recognize that this court's decision in NANIA says that you do not have to discuss them at length but it did say that you have to consider all of them and the district court didn't do so. So that by itself demonstrates procedural error and for that reason the district court did not properly exercise its discretion when it decided to impose the fully consecutive sentence that it did. But she does, I thought she said something to the effect of you, something in effect addressing the issue of marginal punishment, that he needed the marginal punishment. Yes, but the district court said that without any consideration of what the factors are that should inform her decision on that. The district court talks about marginal punishment, says that he basically gets a pass on this other offense if it's not fully consecutive but that's not at all true in any event. The district court should have discussed 3553A factors more fully. Your Honor's comment about how she basically reached the conclusion that she did doesn't tell us about the factors that she relied on specifically as to the consecutive determination. So what did he want her to be talking about? Which one and one or ones in particular? He didn't specifically raise any of them that she should, the statute requires it. That's the error here. Well I mean but but you don't have to talk about things if if they're just sometimes we say stock arguments or the like you know so usually a defendant is going to say you know there's a disparity or they'll say my background, they'll say something. I mean the factors cover a lot of territory and we don't force the district judges to go through every point every time. Certainly they do, Your Honor. In the Garcia-Segura analysis that if there was a mitigating argument that was presented, this is a statutory requirement under 3584B that the statutory factors be considered and as it'll be relevant in the later portion of the argument, if you were to be saying that Garcia-Segura applies, apply it in the appropriate context. It is in regard to mitigation arguments. It does not relieve the district court of its requirements to make 3553A factors both with respect to the initial determination about what the sentence should be or as they particularly relate to 3584B requirements in the criteria of the guidelines and I'll get into the next portion of the argument and that is it's highly relevant to the next section. That is when the district court's exercising its discretion to impose a consecutive or concurrent sentence, 5G 1.3B is also part of the district court's analysis and in this referred to 35, excuse me, section 5G 1.3C instead of B and that was incorrect. The district court got off track then in that further regard. It should have considered and I think that it would have if it had first of all relied on the appropriate guideline manual, which it did not do. It relied on the 2013. Was there a big difference between the two on this point? Enormous. The government's language for the relevant change in the language for 5G 1.3B and it bears significantly on the determination of relevant conduct. The relevant conduct in this case, mind you, we have two separate offenses. We have the illegal reentry case, which there's a separate PSR prepared for, he's charged separately and then we have the separate drug offense. The district court makes no determination about whether or not the illegal reentry is relevant conduct and surely it is. As a matter of fact, the district court, while it's, I don't believe quite on its radar about the relevant conduct determination because again it is off base, it's looking at 5G 1.3BC instead of 5G 1.3C rather than 5G 1.3B, the district court fails to consider what is relevant conduct. But as the transcript shows, the district court asked, did he come back in part to commit the drug offense? So this would be on the district court's radar. It would consider that the illegal reentry by coming back and being present in the country, having access to the drugs, having access to the customers to make the distributions, the whole supply that is relevant for the drug offense under section 21, section 21 USC 841. Seems like an attenuated relationship at best between the earlier offense and this one. Your Honor, his illegal presence in the United States was essential for him to conduct his drug operation that he did. Essential for him to do anything else too, you know, go to church on Sunday or you know whatever. The district court, as I indicated in pages 14 and 15 of the transcript, seemed to that he had come back, although it says not specifically, not solely in the country to deal drugs. The district court's thought, and I believe correct, was that he came back in part to sell illegal drugs. That would make it relevant conduct. Relevant conduct, I find myself in a strange position. I'm arguing that it's broad. I'm sure we want to give you a recording of this argument. I mean, it seems to me it's a very broad position indeed because being in the country is a prerequisite to do virtually anything you do in this country, whether it's legal or illegal, and so I'm afraid there's no limiting principle. He relied specifically on his legal presence to commit the acts that were part of the drug offense, and while you may... I mean, you can certainly be a drug criminal doing business in the United States from a foreign country. And yet he wasn't. We see them all the time. True, but that's not... It just seems like either way you look at it, it's not either necessary or sufficient, but relevant, yes. It is a relevant act, and so it falls within the parameters of the guidelines, very broad definition under 1B13A1A. It's an act that is relevant conduct and should have been considered as such. Going back to the 3553 situation, because in addition to asking whether she hasn't covered what she hasn't covered, I mean, she made it really clear what she was looking for, because she says, I believe we've covered the disparity, the wife's illness, his illness. What else? What other factors? I just want to make sure we've got everything covered that you want covered. And then just the 3553 factors of his own personal history, his family situation, and then counsel says that's it, so anything else you want to add? So when we put it in context, I mean, so to get back to the question that Judge Wood had, and I have the same question, what else should have been covered that she didn't cover? I know you said all the factors, but what else specifically should have been covered that might have had an impact on this sentence? We're not making the argument the judge failed to consider mitigating arguments such that she made any error with respect to Garcia-Segura. That's not our position at all. We're saying that the judge is required to make 3553A determinations, both for the imposition sentence and particularly under 3584. But we've never said that. I mean, this would be a new rule that you're asking for. We've never put it down in that kind of a rigid format. Judge, I think that the NANIA decision at least provides some support for us in saying that you must consider the factors 3553A as they relate to 3584. Furthermore, if the district court did not err, if it had correctly determined that 5G 1.3B was at issue instead of 5G 1.3C, the district court would have naturally made the analysis. It should have made the analysis. It couldn't be excused from making the analysis. Those would all have been determinations that would naturally have flowed and led to a correct consideration of factors, as opposed to blowing by the factors and making no determinations at all as they relate to the correct imposition of sentence as a procedure. Except NANIA doesn't say every little T has to be crossed and I dotted. It says the courts are not required to make formal findings on every factor, 3553. But it also says it must consider them and there's no evidence here that the judge specifically considered those factors in relation to the imposition of the consecutive sentence. Okay, you can save a minute. Welcome back Mr. Fullerton. Don't hurt yourself. Yes, may it please the court. You know, there are no rigid rules regarding what the court is required to pronounce when it comes to 3584, other than the district court must consider the 3553 factors in determining whether or not the sentence should be concurrent or consecutive. And it's clear from the sentencing transcript that's exactly what the district court did here. In fact, the very first words out of the district court's mouth after restating what the guideline range was, it were that the district court, everyone was in agreement that the district court had discretion to determine whether this should be a concurrent or consecutive sentence. The court then went on to discuss the seriousness of the offense, the defendant's personal characteristics, his history of having been deported from the country and coming back, and it was very clear from the court's discussion that what the court was doing was trying, in fact in her words, trying to fashion its ultimate sentence, meaning having in mind that this should be either consecutive or concurrent, all of those factors that she went through factored into that. There was no reason to explain all of this all over again because the district court had explained it thoroughly once already. The district court's decision or her statement of reasons for making the sentence consecutive, namely to promote the seriousness of the offense or provide the marginal punishment that Your Honor referred to, comes in the very middle of its discussion of the 3553 factors. It comes after discussion of the seriousness of the offense and the offender's personal characteristics and history of deportation, and right before the need to avoid sentencing disparities, where the district court actually agreed that a variance from the guideline range was the other thing that followed was, oh, the district court agreed that a variance would be appropriate because of basically the defendant's history of kind of making it for himself in this country after having come here as a child and really being without any resources. She thought that was a credit to him. It's a discussion of his personal history and characteristics, and that discussion or explanation of why it should be concurrent falls right in the middle of this extended discussion of the 3553 factors. There's no reason why it should have been elaborated all over again, and I think that's the reason why the defendant, when asked is there anything I failed to cover here, said no. That really does amount to a waiver. He, the defendant, has agreed at sentencing that a thorough explanation has been given, and there's no need to discuss any of the factors anymore. So just to be clear, this is the 75 month sentence which is a bit below, not very much, but a bit below the advisory range. Yes, it's 87 to 108, so it is some 12 months a year below the low end of the range. As for the relevant, you know, as for this guideline error issue, we don't think there was a guideline error. The district court made clear that it was employing the, at the time, or the new guidelines. For the book, the 2013. Well, the PSR had been written while the 2013 guidelines were in effect. The sentencing took place after the 2014 amendments, so that the offense level for the drug amount had come down, and the parties discussed that, and the district court said, well, under the new guidelines, your offense level has come down, so we're going to employ that new offense level. So the indication was that she was using the current guideline book. So, but whether she was employing the current guideline book or the prior guideline book, either way, in order for that provision of the guidelines that the defendant is referring to to come into effect, the offense of the drug offense and the illegal reentry offense had to be relevant conduct to one another. And while I'm a fan of a broad reading of what constitutes relevant conduct, a simple temporal overlaps of these two offenses, in our view, is not enough. So for those reasons, we ask that the district court's sentence be affirmed. And then in terms of the reasons for supervised release, not explained, I mean, they were not orally pronounced. Not all of them, that's correct. So you can see that we should go back. Everybody agrees that a full, not just, yeah, because that's what I wanted to just clarify. Yes, I think that a full sentencing is required. A full remand on this? A remand for a full resentencing is required for the, because of this problem with the supervised release conditions. Okay, okay. Thank you, Donna. Thank you. Mr. To be a remand and it's for full resentencing, we are going to obviate many of the issues that I've raised here because there will be a new PSR. There will be consideration, hopefully, of the relevant factors. The court will use the correct guideline manual, which incidentally it absolutely did not. PSR paragraph, the paragraph in the PSR refers to the fact that it used the 2013 manual, even though accredited the two-level reduction under what were not a simple temporal overlap. And so some direction from this court would probably be important on that. This is more than timing. This is about physical presence and coming back for what purpose and then engaging in what additional criminal acts. And those are all relevant to something that goes beyond time. And in a sense, if the guidelines are correctly applied and the statutory factors are ticked out appropriately, the guidelines don't call for the sentence that was given. The guidelines basically call for a 36-month sentence to be imposed consecutive to the 41-month sentence because the guidelines say that the relevant conduct provisions would require concurrent sentence for the total sentence that was imposed in the drug case, run it against the amount of time that was imposed in the illegal reentry case. The resulting range would be considerably lower than the sentence that was given here in this case. So for these three reasons, we asked the vacate and remand. Thank you very much. Thanks for your assistance to the court. Thanks as well to the government. The case will be taken under advisement and the court will be in recess.